IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**ANYA DUCKSWORTH**                                                             **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO. 2:14-CV-134-KS-MTP**

**WESLEY HEALTH SYSTEMS, LLC**                                       **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants** Defendant's Motion for Summary Judgment [50] and **denies** Plaintiff's Motion to Stay [59] as **moot**.

### I. BACKGROUND

This is a Title VII employment discrimination and retaliation case.[1] Plaintiff was a nurse at a hospital operated by Defendant. In August 2012, Defendant received a complaint that Plaintiff failed to check on a patient for an entire night. Defendant investigated the complaint and discovered that information Plaintiff had recorded on patients' charts was contradicted by video surveillance. Specifically, Plaintiff recorded that she had made rounds on patients, while the video surveillance demonstrated that she had not done so. Therefore, Defendant initially suspended Plaintiff without pay and ultimately terminated her for falsifying medical records and failing to provide appropriate care to her patients.

Plaintiff filed this lawsuit, alleging that Defendant suspended and terminated her because of her race and in retaliation for her prior complaints of racial

---

[1] 42 U.S.C. § 2000e.

discrimination. Defendant filed a Motion for Summary Judgment [50], which is ripe for review.

## II. DISCUSSION

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### A.  *Discrimination*

First, Defendant seeks summary judgment as to Plaintiff's claim that she was suspended without pay and terminated because of her race. Title VII makes it unlawful

for an employer to "discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). This Court applies a modified version of the *McDonnell Douglas* burden-shifting framework in Title VII discrimination cases. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).[2] "To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). To establish a prima facie case of discrimination, a plaintiff must present evidence that "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Wesley v. Gen. Drivers, Warehousemen & Local 745*, 660 F.3d 211, 213 (5th Cir. 2011).

"If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Davis*, 383 F.3d at 317. "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011).

---

[2]To the extent Plaintiff asserted parallel discrimination and retaliation claims under 42 U.S.C. § 1981, the Title VII framework applies to them. *See, e.g. Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (discrimination claim under § 1981 is analyzed under Title VII framework); *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (retaliation claim under § 1981 is analyzed under Title VII framework).

If the defendant can articulate a legitimate, nondiscriminatory reason for the underlying employment action, the presumption of discrimination disappears, and the plaintiff "must then offer sufficient evidence to create a genuine issue of material fact either (1) that [the defendant's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [the defendant's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [the plaintiff's] protected characteristic (mixed-motives alternative)." *Vaughn*, 665 F.3d at 636.

Defendant argues that Plaintiff can not make out a prima facie case because she has no evidence that she was treated less favorably than a similarly situated white employee. To establish that she was treated less favorably than a similarly situated white nurse:

> [P]laintiff must show that . . . employees who were not members of the plaintiff's protected class were treated differently under circumstances nearly identical to [hers]. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisors or had their employment status determined by the same person, and have essentially comparable violation histories. Moreover, plaintiff's conduct that drew the adverse employment decisions must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions, because if the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2011). However, "'nearly identical' is not synonymous with 'identical.'" *Id.* "[A] requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would

only be in the rarest of circumstances that the situations of two employees would be totally identical." *Id.* "[E]ach employee's track record . . . need not comprise the identical number of identical infractions," but they "must be comparable." *Id.* The Court must view the infractions from the perspective "of the employer at the time of the adverse employment decision." *Id.*

   1.   *Disparate Treatment, Generally*

First, Plaintiff cites evidence that Defendant treated white nurses more favorably than black nurses with respect to certain working conditions. She presented testimony from herself and Vincent Johnson that white nurses generally received more administrative support than black nurses, and that white nurses were not required to "float" to other floors as often as black nurses were.

While this testimony may be relevant to a discrimination claim arising from allegedly disparate working conditions, it is irrelevant to Plaintiff's claim that Defendant suspended her without pay and terminated her because of her race. In order to make out a prima facie case of discrimination, Plaintiff must present evidence that Defendant did not suspend and terminate a white nurse under nearly identical circumstances. *Wesley*, 660 F.3d at 213. Testimony regarding disparate working conditions has no bearing on that issue.

   2.   *Discriminatory Comments*

Next, Plaintiff cites evidence of discriminatory comments made by Phyllis Tingle (Defendant's Nursing Director) and Laura Van Schaik (a former charge nurse).

[C]omments are evidence of discrimination only if they are 1) related to

5

>  the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. Comments that do not meet these criteria are considered "stray remarks," and standing alone, are insufficient to defeat summary judgment.

*Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

Plaintiff admitted during her deposition that the comments at issue occurred years before her suspension and termination. Therefore, they were not "proximate in time to the complained-of adverse employment decision." *Id.* (comment "almost a year before" termination was not "proximate in time"). Also, the comments were not made by "an individual with authority over the employment decision at issue." *Id.* It is undisputed that Phebe McKay (Defendant's Chief Nursing Officer) and Terry Trigg (Defendant's Vice President of Human Resources) made the decision to suspend and terminate Plaintiff.

    3.    *Keith Gamble*

Finally, Plaintiff argues that Keith Gamble, a white nurse, committed the same infraction for which she was suspended and terminated. Plaintiff must provide evidence that Gamble was "treated differently under circumstances nearly identical" to hers. *Turner*, 675 F.3d at 893. "[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). Therefore, Plaintiff must provide evidence that Gamble recorded false information on a patient's chart and failed

to make rounds, but that Defendant did not suspend or terminate him.

Plaintiff represented in briefing that she "informed Ms. McKay that other nurses, including Mr. Gamble . . . , had the same issues with documentation," but the record contains no evidence to this effect. Plaintiff broadly testified [53-1] that other nurses had trouble learning the charting software when it was introduced, and that things were busy on the night in question. She also testified that she asked McKay whether she "check[ed] everybody's documentation . . . ," because she "just [knew] that there were things going on that they wouldn't . . . say anything to [Gamble] about that they would say to [her] about." When asked to clarify the sort of "things" to which she referred, Plaintiff testified that Gamble never received marks for talking on his cell phone or using the computer. She never testified or presented any other evidence that Gamble falsified his charts or was accused of doing so.

Plaintiff apparently accused Gamble of falsifying his charts after Defendant terminated her employment. Defendant presented deposition testimony from McKay [50-4] that Plaintiff "complained" about Gamble in response to her termination. McKay said that Defendant investigated Gamble, reviewed his charting, and concluded that it was sufficient. Plaintiff presented no evidence to dispute this testimony.

In summary, a patient complained that Plaintiff failed to check on him/her for an entire night, but Plaintiff presented no evidence that a similar complaint was lodged against Gamble. The record contains evidence that Defendant investigated Plaintiff's charting in response to the complaint and discovered that it contained false information, but the record contains no similar evidence with respect to Gamble. In

7

fact, the record shows that Defendant investigated Gamble's charting after Plaintiff accused him of falsifying records, but there were no discrepancies. Plaintiff offered nothing but her own suspicion to dispute this evidence. For these reasons, the Court finds that Plaintiff failed to demonstrate that Defendant treated Gamble more favorably than it treated her under nearly identical circumstances. *See id.*

### B.   *Retaliation*

Title VII retaliation claims are also analyzed under the *McDonnell Douglas*, burden-shifting framework. *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013). To establish a prima facie case of retaliation, a plaintiff must prove that (1) she participated in an activity protected by Title VII; (2) her employer took an adverse action against her; and (3) a causal connection between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

Defendant argues that Plaintiff has no evidence that she engaged in a protected activity, or that there is a causal connection between such activity and her termination. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

#### 1.   *Reporting Excessive Force*

First, Plaintiff argues that she engaged in protected activity when she reported to Defendant that another nurse, Kim West, had used excessive force in restraining a

patient. Title VII does not make it unlawful to use excessive force in restraining patients, and Plaintiff's report concerning West was not related to race. Therefore, it does not qualify as "protected activity." *See Young Buisson v. Bd. of Supervisors of the La. Cmty. & Tech. College Sys.*, 592 F. App'x 237, 246 (5th Cir. 2014) (report of non-race based incidents was not protected activity).

### 2. *Reporting Harassing Comments & Behavior*

Next, Plaintiff argues that she reported "numerous issues occurring on the floor that night, including a refusal to provide help to the RN's and harassing comments and behavior directed at Plaintiff by Ms. West on that night." However, Plaintiff provided no evidence that these interactions with West were because of or related to Plaintiff's race. In fact, Plaintiff testified that the conflict with West pertained to a missing patient chart, West's alleged rough handling of a patient, and whether an additional patient would be sent to Plaintiff's floor. Even if West's alleged behavior was because of Plaintiff's race, Plaintiff provided no evidence that she reported it to Defendant as racially-motivated. Therefore, as Plaintiff provided no evidence that her reports of West's behavior were related to race, they do not constitute "protected activity." *See id.* (reports of co-worker's annoying behavior were not protected activity); *Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 653 (5th Cir. 2012) (non-race based employee "grumbling" did not constitute "protected activity"); *Lyles v. Tex. Alcohol Bev. Comm'n*, 379 F. App'x 380, 385 (5th Cir. 2010) (complaints about harassing conduct that did not allege that the conduct was race-based were not protected activity).

### 3. *Miscellaneous Reports Over the Years*

Finally, Plaintiff argues that she made many complaints about "numerous instances of abuse and harassment directed at Plaintiff . . . over the past years" at the hospital. Specifically, she testified that she reported the comments by Tingle and Van Schaike discussed above, that she provided written complaints of racially harassing behavior to Andrea Greene, and that she made complaints to Defendant's CEO. However, it is undisputed that all of these events took place before 2010 – years before Defendant suspended or terminated Plaintiff.

A plaintiff asserting a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 13 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013). Plaintiff has not provided any evidence of causation beyond her own opinion and the temporal relationship of the events. "[T]emporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation." *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). Plaintiff admitted in her deposition that she made these miscellaneous complaints two years or more before her termination. That is not close enough to satisfy the prima facie causation element. *See e.g. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (twenty months was not close enough to indicate causation); *Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 171 (5th Cir. 2014) (ten months was not close enough to indicate causation); *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 921 (5th Cir. 2015) (four months was not close enough to indicate causation); *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401-02 (5th Cir. 2012) (two months was not close

enough to indicate causation).

### III. MOTION TO STAY [59]

On August 19, 2015, Plaintiff's counsel filed an unopposed Motion to Withdraw [57]. The next day, Plaintiff filed a Motion to Stay [59] consideration of Defendant's motion for summary judgment, but she did not articulate a reason to do so. On August 21, 2015, the Court granted [60] Plaintiff's counsel's motion to withdraw.

In an e-mail [57-1] to her previous counsel which was attached to the motion to withdraw, Plaintiff stated that she wanted the Court to defer ruling on Defendant's motion for summary judgment "due to the falsified document from the Mississippi State Board of Nursing . . . ." Plaintiff refers to the August 4, 2015, Final Order [56-1] of Mississippi's Board of Nursing, which Defendant filed as a supplement to its reply without first seeking leave from the Court. However, the Court did not consider the Final Order [56-1] when addressing Defendant's Motion for Summary Judgment [50]. Likewise, the Court did not consider the Amended Final Order [61-1] filed by Defendant on August 26, 2015.

The Court further notes that the motion was fully briefed on June 25, 2015 – almost two months before the Court granted Plaintiff's counsel's motion to withdraw – and Plaintiff had the benefit of counsel at all relevant times. Therefore, Plaintiff's Motion to Stay [59] consideration of the motion for summary judgment is denied as moot.

### IV. CONCLUSION

For the reasons above, the Court **grants** Defendant's Motion for Summary

11

Judgment [50]. Plaintiff provided insufficient evidence to make out prima facie cases of discrimination and retaliation arising from her suspension and termination in August 2012.

The Court is uncertain whether there remain any claims to be adjudicated in this case. Both parties briefed Defendant's dispositive motion as if Plaintiff's discrimination and retaliation claims arising from the suspension and termination were the only ones in the case, but Plaintiff's Complaint [1] includes factual allegations of other employment actions. For example, Plaintiff alleged various examples of "harassing conduct" which created a "hostile work environment."

The Court reminds Plaintiff that she must obtain new counsel or notify the Court that she intends to proceed *pro se* on or before **September 15, 2015**. Plaintiff must also notify the Court of any change of address. The pretrial conference in this matter is currently scheduled for **September 17, 2015**, and the jury trial of this matter is currently scheduled for a two-week term beginning on **October 5, 2015**. If Plaintiff fails to appear for any hearing or conference, fails to notify the Court of a change of address, or otherwise fails to comply with any order of the Court, her rights may be adversely affected or sanctions imposed, up to and including dismissal of this case.

SO ORDERED AND ADJUDGED this 26th day of August, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE